IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL A. STEPHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 05-348J |
| ) | |
| JO ANNE B. BARNHART, ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 9-12, 15). This Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).

Carl A. Stephens (hereinafter "Plaintiff") protectively filed an application for Supplemental Security Income (hereinafter "SSI") benefits under Title XVI of the Social Security Act on November 19, 2003, alleging disability as of September 26, 2003. R. p. 48. This application was initially denied on March 31, 2004. R. p. 25. The Plaintiff filed a timely request for a hearing on May 20, 2004. R. p. 33. An administrative hearing was held in Johnstown, Pennsylvania, on December 14, 2004, before Administrative Law Judge William W. Berg (hereinafter "ALJ"). R. p. 179. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 183-222. Ms. Irene Montgomery, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 222-229.

On January 5, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 15-21. The ALJ determined that the Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, and that he suffered from a thoracic lumbar strain and reactive airway

1

disease. R. pp. 16, 20. Although both of these impairments were deemed to be severe for purposes of 20 C.F.R. § 416.920(a)(4)(ii), it was determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). R. pp. 16, 20. The ALJ further determined that the Plaintiff "retain[ed] the residual functional capacity to engage in light work that avoid[ed] excessive exposure to fumes, odors, dusts, gases or other environmental irritants." R. p. 18. Since the Plaintiff had no past relevant work experience, the burden shifted to the Social Security Administration to show that there were jobs existing in significant numbers in the national economy that the Plaintiff could perform. R. p. 19. The Plaintiff was forty-nine years old on his alleged onset date, and he turned fifty years old on September 7, 2004. R. p. 20. Based on the Plaintiff's residual functional capacity, age, education and work experience, the ALJ concluded that a finding of "not disabled" was directed by application of Medical-Vocational Rules 202.20 and 202.13 in 20 C.F.R. Pt. 404, Subpt. P, App. 2. R. pp. 19-20. Consequently, the Plaintiff was not found to be under a disability for purposes of the Social Security Act. R. pp. 19-21.

On July 8, 2005, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. pp. 4-6. The Plaintiff filed a complaint in this matter on August 30, 2005. Jo Anne Barnhart, Commissioner of Social Security (hereinafter "Commissioner"), filed an answer on November 3, 2005. The Plaintiff and the Commissioner filed cross-motions for summary judgment on December 7, 2005, and January 9, 2006, respectively.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> "This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the

2

> existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits (hereinafter "DIB") or SSI benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national

3

economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)."

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted).

In support of his motion for summary judgment, the Plaintiff contends that the ALJ erred in determining that he was capable of performing light exertional work.[1] Br. for Plaintiff p. 7. The main point of disagreement between the Plaintiff and the Commissioner concerns the weight given to the opinions of Dr. Michael Tatarko, the Plaintiff's treating physician, and Dr. Samuel Massoud, who performed a consultative examination of the Plaintiff at the request of the state agency. R. pp. 136-151, 169-170. The Plaintiff argues that the opinions of these two physicians supported a determination that he was capable of performing only sedentary work, and that the ALJ wrongfully rejected their opinions in determining that he could perform light exertional work.[2] Br. for Plaintiff pp. 7-13. The Commissioner responds by asserting that the opinions of these two physicians were of no "special significance" because they were opinions regarding a matter expressly reserved to the Commissioner under 20 C.F.R. § 416.927(e). Br. for Defendant pp. 12-13. In his reply brief, the Plaintiff asserts that the opinions expressed by Dr. Tatarko and Dr. Massoud were "medical opinions" to which appropriate weight should have been accorded pursuant to 20 C.F.R. § 416.927(a)(2). Reply Br. for Plaintiff p. 2.

The evidence at the heart of this dispute is fairly straightforward. Dr. Massoud's consultative examination of the Plaintiff occurred on March 1, 2004. R. p. 143. In his examination report, Dr. Massoud stated as follows:

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

4

> "The claimant has normal station and gait. Muscle power is 5/5 in all extremities. He may carry and lift 10 or 15 pounds at a time. After that, he tells me he will be uncomfortable regarding his neck and shoulder. He may walk 30 to 45 minutes at a time. He may sit, but he has to change position every 20 minutes or so. He does help with house chores. He can push the sweeper. He could bend only to 65 degrees, and he tried to kneel only halfway down because of pain, mainly his left knee. He has normal balance. He can walk upstairs. Reaching is somehow difficult because of limitation of bending and kneeling. He has normal handling, fingering, feeling, seeing, hearing, speaking, and he has no problem with continence."

R. p. 146. Dr. Massoud also completed a Medical Source Statement in which he indicated that the Plaintiff could frequently lift only 10 pounds. R. p. 148. On August 31, 2004, Dr. Tatarko completed a Medical Source Statement as well. R. pp. 169-170. In that Statement, Dr. Tatarko reported that the Plaintiff was capable of lifting less than 10 pounds on a frequent basis, that he could stand or walk for less than two hours in an 8-hour workday, and that he could sit for less than six hours in an eight-hour workday. R. p. 169.

In concluding that the Plaintiff was capable of performing light work, the ALJ relied on a residual functional capacity assessment form completed by Dr. Frank Bryan, a state agency physician, on March 24, 2004. R. pp. 19, 159. On that form, Dr. Bryan opined that the Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for about six hours in an 8-hour workday, and sit for about six hours in an 8-hour workday. R. p. 153. Dr Bryan also determined that the Plaintiff's pushing and pulling abilities were otherwise unlimited, and that he had no postural, manipulative, visual, communicative or environmental limitations. R. pp. 153-156. As the ALJ noted in his opinion, Dr. Bryan was not an examining physician. R. p. 19. Nevertheless, Dr. Bryan's opinion was properly considered as a "medical opinion" for purposes of 20 C.F.R. § 416.927(a)(2). R. p. 19. Dr. Bryan's findings were consistent with those of a claimant capable of performing work at the light exertional level.

The legal disagreement in this case concerns the interplay between two regulations which, at first glance, appear to be in direct conflict with each other. Both regulations are subsets of 20 C.F.R. § 416.927. The Plaintiff points to the language of 20 C.F.R. § 416.927(a)(2), which states that

5

"[m]edical opinions are statements from physicians and psychologists or other acceptable sources that reflect judgments about the nature and severity of [the claimant's] impairments(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." The Commissioner relies on the language of 20 C.F.R. § 416.927(e)(3), which states that the Social Security Administration "will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (e)(1) and (e)(2)" of that section. The issues reserved to the Commissioner include the ultimate question of a claimant's disability, the question of whether the claimant's impairments meet or medically equal an impairment found in the Listing of Impairments, the determination of the claimant's residual functional capacity, and the application of vocational factors in the claimant's case. 20 C.F.R. § 416.927(e)(1)-(2). The Plaintiff contends that the opinions expressed by Dr. Tatarko and Dr. Massoud were "medical opinions" entitled to controlling or otherwise significant weight, while the Commissioner contends that they were opinions on reserved issues and, therefore, entitled to no "special significance." Br. for Defendant pp. 12-13; Reply Brief for Plaintiff pp. 1-3.

There is an obvious tension between the definition of a "medical opinion," which includes what a claimant "can still do despite [his or her] impairment(s)," and the reservation of the residual functional capacity determination to the Commissioner. 20 C.F.R. § 416.927(a)(2), (e)(2). Under 20 C.F.R. § 416.945(a)(1), a claimant's "residual functional capacity" is defined as "the most that [a claimant] can do despite [his or her] limitations." In support of his position, the Plaintiff relies on *Schwartz v. Halter*, 134 F.Supp.2d 640 (E.D. Pa. 2001), in which the U.S. District Court for the Eastern District of Pennsylvania construed the definition of a "medical opinion" as being broad enough to encompass a physician's residual functional capacity assessment of a claimant. *Schwartz*, 134 F.Supp.2d at 650; Reply Brief for Plaintiff pp. 1-3. The District Court reasoned that since the physician's statements "were not a conclusion as to the ultimate question of the claimant's disability, but rather an assessment of his abilities and limitations, the statements [were to be considered as] medical opinions." *Schwartz*, 134 F.Supp.2d at 650. The Commissioner cites to no specific case in support of her position that the opinions expressed by the Plaintiff's treating and examining physicians were not medical opinions. Br.

for Defendant pp. 12-13.

This Court is unpersuaded by the reasoning of the District Court in *Schwartz* for two independent reasons. First of all, such a broad construction of the definition of a "medical opinion" blurs the distinction between *impairments* and *limitations*. While a "medical opinion" accounts for what a claimant can or cannot do despite his or her *impairments*, a claimant's "residual functional capacity" is the most that a claimant can do despite his or her *limitations*. 20 C.F.R. §§ 416.927(a)(2), 416.945(a)(1);*Oderbert v. Commissioner of Social Security*, 413 F.Supp.2d 800, 803 (E.D. Tex. 2005). Impairments often result in limitations, which is precisely why the Commissioner considers all of the claimant's impairments in assessing his or her residual functional capacity. 20 C.F.R. § 416.945(a)(2). This distinction, however, is clearly expressed in the regulations and must be observed in this case. The second reason for rejecting an overinclusive construction of the definition of a "medical opinion" is the need for adherence to an important rule of statutory construction. As the U.S. Supreme Court explained in *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), constructions which render any word or phrase "superfluous, void, or insignificant" are highly disfavored in our legal system. *Duncan*, 533 U.S. at 174, 121 S.Ct. at 2125, 150 L.Ed.2d at 259, (citations omitted). It is this Court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan*, 533 U.S. at 174, 121 S.Ct. at 2125, 150 L.Ed.2d at 259. Since the regulations promulgated by the Commissioner have been enacted pursuant to an express delegation of rulemaking authority from Congress, this Court is convinced that they should be construed with a similar regard for the significance of every word, phrase, or clause.

The construction proposed by the Plaintiff would render meaningless the words "residual functional capacity" as they appear in 20 C.F.R. § 416.927(e)(2). The regulations clearly state that opinions on issues such as a claimant's residual functional capacity "are not medical opinions," and that no "special significance" is to be given to the sources of opinions on such issues. 20 C.F.R. § 416.927(e), (e)(3). By construing the "medical opinion" definition to account for specific limitations resulting from medically determinable impairments while excluding a claimant's overall residual functional capacity, this Court can give full effect to that definition without eviscerating the language

7

which expressly places the determination of a claimant's residual functional capacity outside of the "medical opinion" category.

This Court's determination with regard to this issue is fully consistent with Social Security Ruling 96-5p, which is relied upon by the Commissioner. Br. for Defendant p. 13. That ruling makes it clear that a residual functional capacity assessment is "based upon consideration of all relevant evidence in the case record, including medical evidence and nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR No. 96-5p. This description of the assessment clarifies that it is not based solely on an evaluation of medical evidence. Furthermore, this Court's construction of the regulations is consistent with the applicable precedents. As the U.S. Court of Appeals explained in *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), "[l]imitations that are medically supported and otherwise uncontroverted in the record" must be factored into the claimant's residual functional capacity. *Rutherford*, 399 F.3d at 554. For this reason, it is apparent that a medical source's opinion as to whether an impairment results in a given functional limitation is a "medical opinion" for purposes of 20 C.F.R. § 416.927(a)(2). In contrast, an opinion as to whether the cumulative effect of a claimant's limitations preclude him or her from engaging in work at the light exertional level is *not* a "medical opinion," regardless of its source.

Based on this standard, the specific limitations placed on the Plaintiff by Dr. Tatarko and Dr. Massoud were "medical opinions" to which appropriate weight was due. The two physicians expressed their opinions not as to whether the Plaintiff was capable of light work, but rather as to whether he was capable of lifting more than 10 pounds on a frequent basis, standing for long periods of time, or sitting for most of the day without having to lie down. R. pp. 143-151, 169-170. Dr. Tatarko's Medical Source Statement was far from a conclusory statement regarding the Plaintiff's inability to work. Dr. Tatarko reported that, aside from the weight limitation, the Plaintiff's pushing and pulling abilities were unlimited. R. p. 170. He determined that the Plaintiff could engage in frequent balancing and occasional climbing, stooping, kneeling, crouching and crawling. R. p. 170. Although he found the

Plaintiff's reaching ability to be limited, he determined that the Plaintiff's handling, dexterity, seeing, hearing and speaking abilities were unlimited. R. p. 170. Finally, Dr. Tatarko indicated that the Plaintiff would need to avoid exposure to fumes, odors, gases and temperature extremes. R. p. 170.

Having determined that the opinions of Dr. Tatarko and Dr. Massoud were "medical opinions" for purposes of 20 C.F.R. § 416.927(a)(2), the Court must proceed to determine whether appropriate weight was given to those opinions under the applicable regulations and controlling precedents. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 F.R. 34490, 34491. The ALJ must accord great weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 61 F.R. 34490, 34492.

Dr. Massoud was not a treating source, but his opinion was nevertheless a medical opinion entitled to appropriate weight. The ALJ specifically noted that he had a duty, in determining the appropriate weight to which Dr. Massoud's opinion was entitled, to "consider the examining relationship, treating relationship, supportability, consistency, specialization and other factors that

9

tend[ed] to support or contradict [the relevant] opinion evidence." R. p. 18. Ultimately, the ALJ concluded that Dr. Massoud's statements were entitled to little weight because they appeared to be mere repetitions of what the Plaintiff had alleged rather than independent findings obtained during the consultative examination. R. p. 18. Given the context of Dr. Massoud's expressed limitations, as quoted earlier, it was not unreasonable for the ALJ to come to the conclusion that the expressed limitations were really just reports of what the Plaintiff had told Dr. Massoud. R. pp. 18, 146. Since the ALJ appropriately weighed Dr. Massoud's opinion as a medical opinion and explained his rationale for rejecting it, the ALJ's determination is entitled to deference in this Court.

Dr. Tatarko, of course, was a treating source. The ALJ acknowledged Dr. Tatarko's opinion that the Plaintiff was "able to lift less than ten pounds, stand and/or walk for under two hours and sit for less than six hours." R. p. 18. Nonetheless, the ALJ accorded little weight to this opinion because it was "not supported by Dr. Tatarko's own treatment notes or the other evidence of record, including objective tests." R. p. 18. The ALJ noted that Dr. Tatarko had not conducted an extensive evaluation of the Plaintiff's neck and lung conditions, and that his failure to do so indicated that the Plaintiff's impairments were "not as limiting" as suggested in Dr. Tatarko's Medical Source Statement. R. p. 18. The ALJ concluded that Dr. Tatarko's statements represented a summary of the Plaintiff's "unsupported allegations." R. p. 18.

Unlike Dr. Massoud's report, which was obviously a repetition of the Plaintiff's complaints, Dr. Tatarko's Medical Source Statement contained nothing on its face which indicated that it consisted of anything less than independent findings. Notwithstanding that fact, however, the ALJ was responsible for evaluating Dr. Tatarko's opinion, and as set forth in the preceding paragraph the ALJ performed such an evaluation and relied upon substantial evidence in the Record in reaching his conclusion, and this Court has no mandate to re-weigh the evidence in the Plaintiff's case record. It is worthy of note that the ALJ did not ignore Dr. Tatarko's recommendations. In determining the Plaintiff's residual functional capacity, the ALJ incorporated Dr. Tatarko's view that the Plaintiff needed to avoid "excessive exposure to fumes, odors, dusts, gases or other environmental irritants." R. pp. 18, 170. In choosing to credit Dr. Bryan's findings that the Plaintiff's limitations were consistent with those of an

10

individual capable of performing light work, the ALJ did not neglect to adequately consider Dr. Tatarko's contrary opinion. In fact, the ALJ even stated that his residual functional capacity assessment was more restrictive than was "warranted by the objective and clinical evidence of record in order to afford the claimant every possible consideration when evaluating his claim for disability benefits." R. p. 18.

Where the opinion of a treating source is "conclusory and unsupported by the medical evidence," the Commissioner is free to adopt the contrary findings of a nonexamining physician. *Jones v. Sullivan*, 954 F.2d 125, 128-129 (3d Cir. 1991). In this case, the only objective medical evidence advanced by the Plaintiff to support the proposed lifting limitations are X-rays showing "slight osteophyte formulation at C5-C6," a left "thoracopectoral contusion/sprain," and three fractured ribs. Br. for Plaintiff p. 11. These X-rays are woefully insufficient to entitle the Plaintiff to a reversal under 42 U.S.C. § 405(g). The Plaintiff does not explain why these X-rays support Dr. Tatarko's lifting restrictions, nor does he attempt to buttress Dr. Tatarko's opinion with additional medical evidence. Given the mandate from Congress that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," this Court must affirm the decision of the Commissioner in this case.

Accordingly, the Court must deny the Plaintiff's Motion for Summary Judgment (Document No. 9) and grant the Commissioner's Motion for Summary Judgment (Document No. 11).

An appropriate order follows.

**AND NOW**, this 13th day of July, 2006, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 11) is GRANTED.

**BY THE COURT:**

*Kim R. Gibson* (signature)

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**